IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| BRUCE HENRY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:21-cv-797-RAH |
| | ) | [WO] |
| RON ABERNATHY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

### I.    INTRODUCTION

In 2013, Bruce Henry was convicted of one count of possession of child pornography in federal court in Alabama.  Years later, Henry married, and in August 2021, his wife gave birth to their son.  Because Henry has a child pornography conviction, Alabama law prohibits him from having overnight visits or residing with his child—no matter how low his risk of recidivism may be.  This life-long prohibition allows no exceptions and contains no mechanism by which a person may request an exception.

In late 2021, Henry filed this lawsuit under 42 U.S.C. § 1983 challenging the constitutionality of portions of Alabama's Sex Offender Registration and Community Notification Act, ALA. CODE § 15-20A-1 *et seq.* (ASORCNA).  Specifically, he challenges the provisions that operate to prohibit him and certain

1

other adult sex offenders from residing with their minor children based solely on a qualifying conviction.  Henry sued, in their official capacities, Defendant Ron Abernathy, Sheriff of Tuscaloosa County, Alabama; Defendant Hays Webb, District Attorney of Tuscaloosa County, Alabama; and Defendant Steve Marshall, Attorney General of the State of Alabama (collectively, the Defendants).  Henry asserts that ALA. CODE § 15-20A-11(d)(4) violates the First Amendment right of intimate association, both facially and as applied to him (Count 1); the Fourteenth Amendment right to the care, custody, and control of one's children, both facially and as applied to him (Count 2); and the Fourteenth Amendment right to equal protection, both facially and as applied to him (Count 3).  Henry seeks declaratory and injunctive relief, as well as attorney's fees and costs.

Defendants Marshall and Webb filed a motion to partially dismiss Henry's Complaint (Doc. 20), as did Defendant Abernathy (Doc. 25).  The motions are fully briefed, and the Court also heard oral argument.  The motions are ripe for decision. For the reasons that follow, the motions are due to be denied.

## II.   JURISDICTION AND VENUE

The Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331.  Personal jurisdiction and venue are uncontested, and the Court concludes that venue properly lies in the Middle District of Alabama.  *See* 28 U.S.C. § 1391.

### III.   LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In ruling on a motion to dismiss for failure to state a claim upon which relief can be granted, the court must accept well-pled facts as true, but the court is not required to accept a plaintiff's legal conclusions.  *See id.* (citing *Twombly*, 550 U.S. at 555).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.  Conclusory allegations that fail to rise "above the speculative level" are insufficient to meet the plausibility standard.  *Twombly*, 550 U.S. at 555.  This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  Indeed,

"[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). It is the plaintiff's responsibility to allege sufficient facts to support his claims. *Twombly*, 550 U.S. at 555.

## IV.   BACKGROUND

When ruling on a motion to dismiss, the Court accepts as true the Complaint's factual allegations and construes them in the light most favorable to Henry.  *See Boyd v. Warden, Holman Corr. Facility*, 856 F.3d 853, 864 (11th Cir. 2017).

### A. Statutory Background

ASORCNA has been described as "the most comprehensive and debilitating sex-offender scheme in the nation." *McGuire v. Marshall*, 512 F. Supp. 3d 1189, 1198 (M.D. Ala. 2021).  As relevant here, § 15-20A-11(d)(4) prohibits adult sex offenders convicted of a "sex offense involving a child" from having overnight visits or residing with their children.

One arrives at this prohibition via two layers of exceptions to the statute's general rule.  The statute provides that "[n]o adult sex offender shall reside or conduct an overnight visit with a minor."  ALA. CODE § 15-20A-11(d).  A minor is "[a] person who has not attained the age of 18."  *Id.* § 15-20A-4(13).  However, an exception to the prohibition applies "if the adult sex offender is the parent, grandparent, stepparent, sibling, or stepsibling of the minor."  *Id.*  § 15-20A-11(d).

4

That exception itself has five exceptions, including, as relevant here, if the adult sex offender has been convicted of "any sex offense involving a child." *Id.* § 15-20A-11(d)(4).[1]  Section 15-20A-4(27) defines "sex offense involving a child" as "[a] conviction for any sex offense in which the victim was a child or any offense involving child pornography."  A child is "[a] person who has not attained the age of 12." *Id.* § 15-20A-4(2).[2]  No one disputes that Henry's child pornography conviction qualifies as an "offense involving child pornography" within the meaning of § 15-20A-4(27).

ASORCNA defines "overnight visit" as "[a]ny presence between the hours of 10:30 p.m. and 6:00 a.m." *Id.* § 15-20A-4(14).  Additionally, it defines "reside" as being "habitually or systematically present at a place," which "shall be determined by the totality of the circumstances, including the amount of time the person spends

---

[1] The other exceptions where an adult sex offender cannot reside or conduct overnight visits with their minor child, grandchild, stepchild, sibling, or stepsibling are (1) the adult sex offender's parental rights "have been or are in the process of being terminated as provided by law," *id.* § 15-20A-11(d)(1); (2) the adult sex offender has been convicted of any sex offense in which the victim was "any of the minor children, grandchildren, stepchildren, siblings, or stepsiblings of the adult sex offender," *id.* § 15-20A-11(d)(2); (3) "[t]he adult sex offender has been convicted of any sex offense in which a minor was the victim and the minor resided or lived with the adult sex offender at the time of the offense," *id.* § 15-20A-11(d)(3); and (4) "[t]he adult sex offender has been convicted of any sex offense involving forcible compulsion in which the victim was a minor," *id.* § 15-20A-11(d)(5).

[2] Thus, if a sex offender has committed a sex offense against a victim who was under 12 years old, the offender is prohibited from residing with or conducting an overnight visit with their own minor child until their minor child turns 18.

at the place and the nature of the person's conduct at the place." *Id.* § 15-20A-4(20).

ASORCNA further defines "reside" as follows:

> The term reside includes, but is not limited to, spending more than four hours a day at the place on three or more consecutive days; spending more than four hours a day at the place on 10 or more aggregate days during a calendar month; or spending any amount of time at the place coupled with statements or actions that indicate an intent to live at the place or to remain at the place for the periods specified in this sentence.

*Id.*

Thus, § 15-20A-11(d)(4) prevents a parent subject to its provisions from being present in the home where their minor child resides in the following circumstances: (1) at any time between the hours of 10:30 p.m. and 6:00 a.m.; (2) for more than four hours a day on three consecutive days; (3) for more than four hours a day on ten or more days during a calendar month; and (4) in any other circumstance in which the parent is "habitually or systemically present" at the minor's home.  *Id.*

These residency restrictions apply for life.  The statute contains no mechanism by which an offender can challenge or petition for relief from the restriction.[3]

---

[3] ASORCNA allows a sex offender to petition for relief from the residency restriction in § 15-20A-11(a) "during the time a sex offender is terminally ill or permanently immobile, or the sex offender has a debilitating medical condition requiring substantial care or supervision or requires placement in a residential health care facility."  *Id.* § 15-20A-23(a).  Section 15-20A-11(a) prohibits adult sex offenders from establishing or maintaining a residence "within 2,000 feet of the property on which any school, childcare facility, or resident camp facility is located."  However, neither § 15-20A-23 nor any other ASORCNA provision allows a sex offender to petition for relief from the residency restriction in § 15-20A-11(d), which prohibits adult sex offenders from residing or conducting overnight visits with a minor.

The Alabama Legislature's stated finding is that residence restrictions further "the primary governmental interest of protecting vulnerable populations, particularly children." *Id.* § 15-20A-2(5).

## B. Factual Background

Henry currently resides in Tuscaloosa County, Alabama. In 2013, Henry was convicted, pursuant to a guilty plea, of one count of possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B), in the United States District Court for the Northern District of Alabama. He was released from incarceration in 2018. Henry later got married, and his wife had a son on August 4, 2021. Due to ALA. CODE § 15-20A-11(d)(4), Henry is prohibited from "residing" or "conducting an overnight visit" with his minor child. As a result, the child is in the physical custody of Henry's wife. But for § 15-20A-11(d)(4), Henry would reside and have overnight visits with his child.

According to Henry, his possession of child pornography was the result of a pornography addiction and is not indicative of pedophilia. He alleges that he does not pose a meaningful risk to his own child if allowed to reside or have overnight visits with him. He further alleges that neither an individual's commission of a sex offense in which the victim was a child, nor an individual's commission of an offense involving child pornography, by itself indicates that the individual poses a danger to their own child if allowed to reside or have an overnight visit with their child.

According to Henry, it is possible to determine, to a reasonable degree of scientific certainty, an individual's risk of committing a recidivistic sexual offense against their own child.

## V.    DISCUSSION

The Defendants seek to dismiss Henry's facial challenges to § 15-20A-11(d)(4) under the First and Fourteenth Amendments and Henry's equal protection claim in its entirety.  The Court first addresses Defendant Webb and Marshall's argument that Henry abandoned some of his facial challenges and then will explain the organization of the Court's analysis.

In their reply brief, Defendants Webb and Marshall argue that Henry abandoned his Fourteenth Amendment facial challenges because Henry's response addresses only his First Amendment facial challenge.  Defendants Webb and Marshall are wrong: Henry directly addresses his Fourteenth Amendment facial challenge regarding the right to the care, custody, and control of one's children.  (*See* Doc. 27 at 4 n.2 (in section of response brief addressing facial challenges, arguing that the Complaint alleges that the statute severely burdens the "14th Amendment right of a parent to the 'care custody, and control of their children'" and is therefore subject to strict scrutiny review); 5 ("Defendants here do not argue that the statute is not subject to 'strict scrutiny' analysis, nor could they given the well-established First and Fourteenth Amendment rights at issue.").)  The Court acknowledges that

8

Henry did not expressly reference "equal protection" in the section of his response brief addressing his facial challenges. But in the section of his response brief addressing his equal protection claim, he argues that § 15-20A-11(d)(4) is subject to strict scrutiny because it infringes upon fundamental rights, specifically the First Amendment right to intimate association and the Fourteenth Amendment right of parents to the care, custody, and control of their children. Thus, Henry's equal protection arguments build upon on the arguments he pressed regarding his facial challenges. Additionally, Henry's equal protection arguments address the allegedly unconstitutional classifications created by § 15-20A-11(d)(4) in general—not only as applied to him. For these reasons, the Court is not persuaded that Henry has abandoned his Fourteenth Amendment facial challenges.

Moreover, as Henry correctly points out, "the distinction between facial and as-applied challenges is not so well defined that it has some automatic effect or that it must always control the pleadings and disposition in every case involving a constitutional challenge." *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 331 (2010). Rather, the distinction "goes to the breadth of the remedy employed by the Court." *Id.* Finally, even if Defendants Webb and Marshall were correct, the Fourteenth Amendment facial challenges would not be due to be dismissed in their entirety because Defendant Abernathy did not argue that Henry abandoned such facial challenges (indeed, Defendant Abernathy did not file a reply brief at all). For

these additional reasons, the Court declines to conclude that Henry abandoned his Fourteenth Amendment facial challenges.

Turning to the merits, the Court will begin by addressing Henry's claims that § 15-20A-11(d)(4) facially violates the First Amendment right to intimate association and the Fourteenth Amendment right of parents to the care, custody, and control of their children; and then the Court will address Henry's equal protection claim in its entirety. The Court has organized its discussion in this way both to track how the parties organized their arguments in briefing the motions to dismiss and also because Henry's equal protection claim, both facially and as applied, requires analysis of an issue not implicated in his other claims, namely whether the classifications of sex offenders created by § 15-20A-11(d)(4) are similarly situated.

## A. Facial Challenges

The Defendants argue that Henry's facial challenges fail because he cannot show that the provision is unconstitutional in all of its applications—which, according to the Defendants, is the applicable standard for facial challenges. Henry counters that the Defendants are wrong about the applicable standard, that § 15-20A-11(d)(4) is subject to strict scrutiny review because it burdens fundamental rights, and that his facial challenges to the provision are viable because the provision is not narrowly tailored to serve a compelling government interest. The Court will expand upon and address the parties' arguments below.

### 1. *Salerno*'s Role

Citing *United States v. Salerno*, 481 U.S. 739, 745 (1987), the Defendants argue that Henry's facial challenges are due to be dismissed because Henry cannot establish that "no set of circumstances exists under which [§ 15-20A-11(d)(4)] would be valid"—*i.e.*, that the law is unconstitutional in all of its applications. In response, Henry contends that a statute severely burdening First and Fourteenth Amendment rights is subject to strict scrutiny review.  He further argues that § 15-20A-11(d)(4) severely burdens those rights by prohibiting certain sex offenders from ever residing or conducting an overnight visit with their minor child.  He contends that the Defendants misconstrue and misapply *Salerno* by failing to analyze § 15-20A-11(d)(4) under the relevant constitutional doctrine, which, according to Henry, is strict scrutiny.[4]  Citing the Tenth Circuit's decision in *Doe v. City of Albuquerque*, 667 F.3d 1111, 1127 (10th Cir. 2012), Henry contends that *Salerno*'s "no set of circumstances" language does not set forth a "*test* for facial challenges" but rather describes "the *result* of a facial challenge in which a statute fails to satisfy the appropriate constitutional standard." (Doc. 27 at 6.)  Put differently, "where a statute

---

[4] Although Henry also alleges in the Complaint, and argued in his response, that § 15-20A-11(d)(4) is overbroad in violation of the First Amendment, Henry disclaimed this position during oral argument.  Moreover, the Eleventh Circuit has explained that the Supreme Court has limited the overbreadth doctrine to "cases involving restrictions on the right to free speech" and not other First Amendment conduct.  *See DA Mortg., Inc. v. City of Miami Beach*, 486 F.3d 1254, 1269 (11th Cir. 2007).  And as will be explained further, the Court concludes that Henry's facial challenges survive dismissal without regard to his overbreadth arguments.  Accordingly, the Court will not address Henry's overbreadth arguments.

fails the relevant constitutional test"—*e.g.*, strict scrutiny or rational basis review—the statute "can no longer be constitutionally applied to anyone—and thus there is 'no set of circumstances' in which the statute would be valid." (*Id.* at 6–7 (quoting *City of Albuquerque*, 667 F.3d at 1127).)

In their reply, the Defendants do not meaningfully engage with Henry's arguments. They brush off Henry's cited authority because it is "out-of-circuit," repeat their contention that "no set of circumstances" is the applicable "test" for facial challenges in the Eleventh Circuit, and assert that Henry has not shown that his claims are "exempt" from *Salerno*'s "'no set of circumstances' test." The Defendants do not articulate the constitutional standard they think should apply to Henry's claims, be it rational basis or something else. As a threshold matter, Henry does not argue that his claims are "exempt" from *Salerno*'s "no set of circumstances" language—instead, Henry seeks to explain how *Salerno*'s language actually operates when courts analyze facial challenges to statutes. Considering the parties' submissions and the relevant caselaw, the Court concludes Henry has the better argument.

The Defendants' free-floating "no set of circumstances" test, untethered from any constitutional standard, not only doesn't make sense on its face (no pun intended) but is also inconsistent with both the Supreme Court's and the Eleventh Circuit's treatment of facial challenges. First, it does not make sense because one

cannot determine whether a law is unconstitutional in all of its applications without applying the relevant constitutional test to the challenged law—be it strict scrutiny, rational basis, or another test.  Second, the Supreme Court and the Eleventh Circuit have long analyzed facial challenges under the "relevant constitutional test," while also recognizing *Salerno*'s "no set of circumstances" language.  Indeed, the Tenth Circuit's discussion in *City of Albuquerque*, upon which Henry relied, was recently adopted by the Eleventh Circuit in a published opinion analyzing a facial challenge to a city ordinance that the plaintiff argued was preempted by federal law.  *See Club Madonna Inc. v. City of Miami Beach*, 42 F.4th 1231, 1256 (11th Cir. 2022).[5]

In *Club Madonna*, the Eleventh Circuit rejected the argument that a plaintiff asserting a facial challenge must show that "the law is invalid in all circumstances," explaining that this argument "misstates the law governing facial challenges."  *Id.* at 1256.  The court further explained that "the question that *Salerno* requires us to answer is whether the statute fails the relevant constitutional test."  *Id.*[6]  Agreeing

---

[5] In fairness to the Defendants, *Club Madonna* was decided after the parties' briefing on the motions to dismiss had concluded.

[6] Although the Eleventh Circuit has elsewhere indicated that *Salerno*'s "strict 'no set of circumstances' test is the proper standard for evaluating a facial challenge," *Am. Fed. of State, Cnty., & Mun. Emps. Council 79 v. Scott*, 717 F.3d 851, 863 (11th Cir. 2013), the *Club Madonna* court acknowledged that this language from *Salerno* "has been subject to a heated debate in the Supreme Court, where it has not been consistently followed," *see* 42 F.4th at 1256 (quoting *United States v. Frandsen*, 212 F.3d 1231, 1235 n.3 (11th Cir. 2000)).  And in 2010, the Supreme Court acknowledged that a plaintiff asserting a facial challenge typically has to establish "that no set of circumstances exists under which [the law] would be valid" *or* "that the statute lacks any 'plainly legitimate sweep.'"  *United States v. Stevens*, 559 U.S. 460, 472 (2010) (first quoting *Salerno*, 481 U.S. at 745; then quoting *Washington v. Glucksberg*, 521 U.S. 702, 740 n.7 (1997) (Stevens, J.,

with *City of Albuquerque*, the court explained that "*Salerno* is correctly understood not as a separate test applicable to facial challenges, but a description of the outcome of a facial challenge in which a statute fails to satisfy the appropriate constitutional framework." *Id.* (quoting *City of Albuquerque*, 667 F.3d at 1123). The *Club Madonna* court concluded that the challenged ordinance "fail[ed] the relevant constitutional test"—the standard for federal conflict preemption—"because, by requiring certain businesses to verify the employment eligibility of independent contractors and casual hires, it obstructs federal law"; thus, "[t]his provision of the law is facially invalid." *Id.*

*Club Madonna*'s analysis makes plain what the Supreme Court and the Eleventh Circuit have long done when evaluating facial challenges: determining whether the challenged law "fails the relevant constitutional test." *Accord City of Albuquerque*, 667 F.3d at 1123 (explaining that, when the Supreme Court has evaluated facial challenges, the Court has "applied the appropriate constitutional test to the restriction at issue"). The Court will summarize several decisions that illustrate this mode of analysis, beginning with *Salerno*.

---

concurring)). The Court went on say that "[w]hich standard applies in a typical case is a matter of dispute that we need not and do not address." *Id.* In any event, as will be explained further below, both the Supreme Court and Eleventh Circuit have routinely applied the relevant constitutional test when assessing facial challenges.

In *Salerno*, the Supreme Court addressed a claim that the federal Bail Reform Act was facially unconstitutional because the Act constituted punishment in violation of due process.  481 U.S. 739.  The Court concluded that the Act did not constitute punishment—and therefore did not violate substantive due process—because there was a reasonable fit between the alleged deprivation of liberty and the government's legitimate interest, and that the Act did not violate procedural due process because it contained "extensive safeguards."  *Id.* at 749–52.  In considering the facial challenge in *Salerno*, the Court did not reject the facial challenge on the grounds that a hypothetical scenario existed in which the Act could be applied constitutionally; instead, the Court rejected the facial challenge based on its application of the relevant constitutional test to the Act.

Additionally, in *Washington State Grange v. Washington State Republican Party*, the Supreme Court evaluated a facial challenge to a Washington "blanket primary" initiative and analyzed whether the initiative would be subject to strict scrutiny on the grounds that it severely burdened First Amendment associational rights.  552 U.S. 442, 445, 451 (2008).  Citing *Salerno*, the Court explained that "a plaintiff can only succeed in a facial challenge by 'establish[ing] that no set of circumstances exists under which the Act would be valid,' *i.e.*, that the law is unconstitutional in all of its applications."  *Id.* at 449 (alteration in original) (quoting *Salerno*, 481 U.S. at 745).  The Court then explained that "[e]lection regulations that

impose a severe burden on associational rights are subject to strict scrutiny, and we uphold them only if they are 'narrowly tailored to serve a compelling state interest.'" *Id.* at 451. The Court rejected the facial challenge because the purported burdens on associational rights did not "depend . . . on any facial requirement of [the initiative]." *Id.* at 454. Thus, "[o]n its face," the initiative "d[id] not impose any severe burden on [the challengers'] associational rights." *Id.* at 458. In considering the facial challenge in *Washington State Grange*, the Court did not reject the facial challenge on the grounds that a hypothetical scenario existed in which the challenged initiative could be applied constitutionally; instead, the Court rejected the facial challenge based on its application of the relevant constitutional test—strict scrutiny—to the initiative.

The Supreme Court has followed this method of analysis in still other cases. *See, e.g.*, *Doe v. Reed*, 561 U.S. 186, 190–202 (2010) (in facial challenge to Washington statute compelling disclosure of information on referendum petitions upon request, explaining that such disclosure requirements are reviewed under "exacting scrutiny"; analyzing the law under the exacting scrutiny standard, and concluding that disclosure under the law "would not violate the First Amendment with respect to referendum petitions *in general*" (emphasis added)); *id.* at 231–39 (Thomas, J., dissenting) (assuming that to prevail on a facial challenge, the plaintiffs had to show that there is "'no set of circumstances . . . under which' the [statute]

could be constitutionally applied to a referendum of initiative petition," and opining that "application of the PRA to a referendum petition does not survive strict scrutiny" and that "[t]he foregoing analysis applies in every case involving disclosure of a referendum measure's supporters, as it must for petitioners' facial challenge to succeed" (first alteration in original) (citation omitted)).

The Eleventh Circuit's approach has been consistent with the Supreme Court's approach.  For example, in *DA Mortgage, Inc. v. City of Miami Beach*, the Eleventh Circuit analyzed a First Amendment facial challenge to a city noise ordinance.  486 F.3d 1254, 1261–63 (11th Cir. 2007).  The court acknowledged that plaintiffs bringing a facial challenge generally must show that there is "no set of circumstances" in which the law would be valid (except for First Amendment overbreadth challenges).  *Id.* at 1269 (quoting *Salerno*, 481 U.S. at 745).  But the court also explained that "[t]he first-step in evaluating the constitutionality of an ordinance which restrains protected speech or expression is to determine whether the government is proscribing the speech because it disfavors the message," explaining that "[i]n such a case, courts will subject the ordinance to strict scrutiny analysis."  *Id.* at 1266 (citations omitted).  But if "the ordinance is content-neutral, courts will analyze it according to intermediate scrutiny."  *Id.*  Having concluded that the noise ordinance was "facially [content] neutral," the court proceeded to analyze whether the ordinance contains "permissible time, place and manner

restrictions," explaining that the "pertinent test requires that we apply intermediate scrutiny as our standard of review." *Id.* at 1266–67. The court concluded the ordinance survived a facial challenge because it was content neutral and set "permissible time, place and manner restrictions." *Id.* at 1268–69. Thus, the Eleventh Circuit did not apply *Salerno*'s "no set of circumstances" language in a vacuum, nor did it reject the facial challenge on the grounds that the ordinance could be applied constitutionally in some hypothetical scenario; instead, the court determined and then applied the "relevant constitutional test"—intermediate scrutiny—to the challenged ordinance.

More recently, in *Schultz v. Alabama*, the Eleventh Circuit analyzed facial equal protection and procedural due process challenges to an Alabama county's bail policy. 42 F.4th 1298 (11th Cir. 2022). Having determined that the plaintiff brought a facial (rather than as-applied) challenge to the policy, the court explained that the "lawsuit will succeed only if [the county's] new scheme is facially unconstitutional—i.e., if [the plaintiff] can 'establish that no set of circumstances exists under which the [bail scheme] would be valid.'" *Id.* at 1319 (third alteration in original) (quoting *Salerno*, 481 U.S. at 745). The court then discussed at length what level of scrutiny applied to the equal protection claim: rational basis or heightened scrutiny. *See id.* at 1322–30. The court ultimately concluded that the rational basis standard applied and that the bail policy survived rational basis review.

*Id.* at 1330–31.   Similarly, the court analyzed the due process claim under the relevant framework of whether preventive detention "serve[s] a legitimate state objective" and whether the "procedural safeguards" are "adequate to authorize the pretrial detention."  *Id.* at 1332 (citation omitted).  The court concluded that the bail policy did not violate due process under that standard.  *Id.* at 1333, 1335.  Again, the Eleventh Circuit did not apply *Salerno*'s "no set of circumstances" language in a vacuum, nor did it reject the facial challenge on the grounds that the policy could be applied constitutionally in some hypothetical scenario; instead, the court determined and then applied the "relevant constitutional tests" to the challenged policy.

Considering the authorities discussed above, the Court rejects the Defendants' argument that the Court's task is to determine whether § 15-20A-11(d)(4) is unconstitutional in all of its applications without regard to the relevant constitutional test applicable to Henry's First and Fourteenth Amendment claims.   Instead, the Court's must determine "whether [§ 15-20A-11(d)(4)] fails the relevant constitutional test."  *See Club Madonna Inc.*, 42 F.4th 1231 at 1256.

### 2.  The Relevant Constitutional Test

Having determined *Salerno*'s relevance to the Court's analysis, the Court now considers the relevant constitutional test applicable to Henry's claims.  Henry asserts that § 15-20A-11(d)(4) severely burdens fundamental First Amendment intimate association rights and Fourteenth Amendment rights of parents to the care, custody,

and control of their children by prohibiting certain sex offenders from ever residing or conducting an overnight visit with their minor children. Henry does not challenge Alabama's authority to prevent sex offenders from residing with minor children generally; instead, he challenges Alabama's authority to prohibit parents from residing with their own children based solely on the parents' qualifying conviction of a sex offense. Henry acknowledges that promoting child safety is a compelling government interest, but he alleges that § 15-20A-11(d)(4) is not narrowly tailored to serve that interest because a significantly less restrictive alternative exists: the State could impose the restriction on an individualized basis after determining that the sex offender posed an actual danger to their child. Because, according to Henry, § 15-20A-11(d)(4) is not narrowly tailored, it is facially invalid.

The First Amendment protects the right of intimate association. *Gaines v. Wardynski*, 871 F.3d 1203, 1212 (11th Cir. 2017). The right of intimate association is "'the freedom to choose to enter into and maintain certain intimate human relationships,' and it is protected from undue government intrusion 'as a fundamental aspect of personal liberty.'" *Id.* (quoting *McCabe v. Sharrett*, 12 F.3d 1558, 1563 (11th Cir. 1994)). This constitutional protection encompasses the raising of one's children and cohabitating with one's relatives. *See Roberts v. U.S. Jaycees*, 468 U.S. 609, 619 (1984). A statute that "'directly and substantially' interfere[s] with family living arrangements" burdens this fundamental right. *See Lyng v.*

*Castillo*, 477 U.S. 635, 638 (1986). "[W]hen the government intrudes on choices concerning family living arrangements," courts "must examine carefully the importance of the governmental interests advanced and the extent to which they are served by the challenged regulation." *Moore v. City of E. Cleveland*, 431 U.S. 494, 499 (1977) (plurality opinion). Additionally, the Supreme Court has long recognized that the Due Process Clause of the Fourteenth Amendment protects parents' "fundamental right" in "the care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 66 (2000) (collecting cases); *see also Stanley v. Illinois*, 405 U.S. 645, 651 (1972) (explaining that the right to raise one's children "ha[s] been deemed 'essential,'" and that "the custody, care and nurture of the child reside first in the parents" (citations omitted)); *Santosky v. Kramer*, 455 U.S. 745, 753 (1982) (explaining that natural parents have a "fundamental liberty interest . . . in the care, custody, and management of their child").

If § 15-20A-11(d)(4) burdens one or both of these fundamental rights, then the provision "must withstand strict scrutiny." *See Doe v. Strange*, No. 2:15-cv-35161, 2016 WL 1079153, at *13 (M.D. Ala. Mar. 18, 2016) (citing *Reno v. Flores*, 507 U.S. 292, 302 (1993)). To survive strict scrutiny review, the provision must be "narrowly tailored to serve a compelling state interest." *Reno*, 507 U.S. at 302; *Doe v. Moore*, 410 F.3d 1337, 1343 (11th Cir. 2005). The Defendants bear the burden of demonstrating that the provision is narrowly tailored. *See Chabad-Lubavitch of Ga.*

*v. Miller*, 5 F.3d 1383, 1395 (11th Cir. 1993) (en banc) (in First Amendment challenge to state's exclusion of religious speech from a public forum, explaining that the state must demonstrate that its action is narrowly tailored to serve a compelling interest in order to satisfy strict scrutiny).

The Defendants do not argue that strict scrutiny does not apply here. They do not argue that the asserted rights are not fundamental rights. Nor do they argue that § 15-20A-11(d)(4) does not severely burden those rights. Nor do they argue or attempt to explain how § 15-20A-11(d)(4) is narrowly tailored. They do argue that § 15-20A-11(d)(4) serves the state's compelling interest in promoting child safety by "restricting sex offenders convicted of, for example, '[i]ncest' with a child or as a '[f]oster parent engaging in a sex act . . . with a foster child' from residing with children." (Doc. 20 at 5–6 (alterations in original) (quoting ALA. CODE § 15-20A-5(19) & (22)).)[7] But the Defendants do not articulate the constitutional standard they think should apply to Henry's claims, be it rational basis or another standard. Moreover, Henry challenges § 15-20A-11(d)(4)'s prohibition on parents residing with their own children based solely on the parents' qualifying sex offense conviction—*not* ASORCNA's other provisions which prohibit sex offenders from residing with minor children generally. Additionally, if the victim of the parent's

---

[7] Incest and "[f]oster parent engaging in a sex act . . . with a foster child" are two offenses that are considered sex offenses under ASORCNA. ALA. CODE § 15-20A-5(19) & (22).

incest was the parent's own minor child, then the parent would be prohibited from residing with their child by virtue of subsection (d)(2) and regardless of subsection (d)(4).

Putting those issues aside, the Defendants are not entitled to dismissal of Henry's facial challenges on the grounds that Henry cannot show that "the law is invalid in all circumstances"; instead, the outcome turns on whether § 15-20A-11(d)(4) "satisf[ies] the appropriate constitutional framework." *See Club Madonna*, 42 F.4th at 1256 (citation omitted) (rejecting municipality's argument that, to succeed on facial challenge, the plaintiff had to show there was "no hypothetical situation in which the [challenged law] could be validly applied"). Again, the Defendants do not even identify a constitutional framework under which Henry's claims should be analyzed. And the Defendants do not even attempt to explain how § 15-20A-11(d)(4)—which, on its face, severely restricts the hours a parent may be present in their own child's home, and which applies until their child turns 18 with no ability for the parent to petition for relief or for an exception, all based upon a single fact—is *narrowly tailored* to serve the state's compelling interest in promoting child safety. Although the Defendants argue that § 15-20A-11(d)(4) "serves" a compelling interest, they do not argue that it is narrowly tailored. (*See* Doc. 20 at 5–6; Doc. 25 at 5.)

The Defendants also do not respond to Henry's specific argument that § 15-20A-11(d)(4) is not narrowly tailored because a significantly less restrictive alternative exists: the State could impose the restriction on an individualized basis after determining that the sex offender posed an actual danger to their child.  Recall Henry's allegation that it is possible to determine, to a reasonable degree of scientific certainty, an individual's risk of committing a recidivistic sexual offense against their own child.  Moreover, an individualized risk assessment is what the State requires to evaluate a sex offender's petition for relief from the residency restriction in § 15-20A-11(a) on the basis of terminal illness or debilitating medical condition.  *See* ALA. CODE § 15-20A-23 (explaining what information must be provided in support of the petition, including the sex offender's criminal record; that the court shall hold a hearing on the petition within 30 days, during which the victim is allowed to testify; and that the court must release the sex offender from § 15-20A-11(a)'s residency restrictions if the court finds by clear and convincing evidence that the sex offender "(1) is terminally ill, permanently immobile, has a debilitating medical condition requiring substantial care or supervision, or requires placement in a residential health care facility and (2) does not pose a substantial risk of perpetrating any future sexual offense").

In a somewhat analogous matter, the Supreme Court held that a state statute violated unwed fathers' procedural due process and equal protection rights where

the statute abrogated those fathers' parental rights based solely on their membership in a class rather than an individualized determination of fitness. *See Stanley*, 405 U.S. at 656–57. Although the *Stanley* Court did not analyze the First Amendment right to intimate association, the Court acknowledged that the right to raise one's children "ha[s] been deemed 'essential'" and that "the custody, care and nurture of the child reside first in the parents." *Id.* at 651 (citations omitted). Thus, this Court finds *Stanley* instructive.

The Court does not conclude that narrow tailoring in this context *requires* an individualized risk assessment in general or the type of assessment set forth in § 15-20A-23 in particular. Rather, because the Defendants failed to respond to Henry's arguments on this point or otherwise explain how § 15-20A-11(d)(4) is narrowly tailored, the Court concludes that at this stage, the Defendants have failed to demonstrate that Henry's facial challenges should be dismissed. *Cf. City of Albuquerque*, 667 F.3d at 1133–36 (affirming grant of summary judgment in favor of plaintiff sex offender who brought First Amendment challenge to ordinance prohibiting registered sex offenders from entering public libraries where the city presented no evidence that the prohibition was "narrowly tailored to serve its interest in providing a safe environment for library patrons").

Additionally, Henry correctly points out that "the distinction between facial and as-applied challenges is not so well defined that it has some automatic effect or

that it must always control the pleadings and disposition in every case involving a constitutional challenge." *Citizens United*, 558 U.S. at 331. The distinction "goes to the breadth of the remedy employed by the Court, not what must be pleaded in a complaint." *Id.*

For all of these reasons, the Defendants' motions to dismiss Henry's facial challenges in Counts 1 and 2 are due to be denied.

## B. Equal Protection Claim

The Court now turns to Henry's equal protection claim. Henry asserts that § 15-20A-11(d)(4) violates the Equal Protection Clause because it prohibits him and other sex offenders with child pornography convictions, but not certain other sex offenders, from living with their minor children. The Defendants argue that the equal protection claim fails because Henry cannot show that child pornography offenders are similarly situated to other sex offenders. Henry responds that the two groups of sex offenders are similarly situated, that his equal protection claim must be analyzed under strict scrutiny because the provision burdens fundamental First and Fourteenth Amendment rights, and that the provision cannot withstand strict scrutiny review because it is not narrowly drawn.

"The Equal Protection Clause 'is essentially a direction that all persons similarly situated should be treated alike.'" *Chabad Chayil, Inc. v. Sch. Bd. of Miami-Dade Cnty.*, 48 F.4th 1222, 1233 (11th Cir. 2022) (quoting *City of Cleburne*

26

*v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)).   The Clause prevents the government from "treating differently persons who are in all relevant respects alike." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992).  "When legislation classifies persons in such a way that they receive different treatment under the law, the degree of scrutiny the court applies depends upon the basis for the classification."  *Gary v. City of Warner Robins*, 311 F.3d 1334, 1337 (11th Cir. 2002).  "[G]roup classification by legislative act will be analyzed under strict scrutiny if the classification infringes fundamental rights."  *Moore*, 410 F.3d at 1346.

In his Complaint, Henry alleges that § 15-20A-11(d)(4) creates two classifications of persons: (1) persons who have been convicted of a sex offense involving child pornography who are not allowed to reside with their children—the classification applicable to Henry; and (2) persons who have been convicted of a sex offense not involving child pornography who are allowed to reside with their children.  He further alleges that child pornography offenders do not pose a risk to their own children solely because they have been convicted of a child pornography offense, that every person subject to either of the aforementioned classifications is required to register as a sex offender under ASORCNA, and that there is no meaningful distinction between these two classifications with respect to the risk the offenders pose to their own children if allowed to reside with them.  Consequently, Henry argues, these two classifications of persons are similarly situated for equal

protection purposes because they share the relevant characteristics of (1) being required to register under ASORCNA and (2) not posing a meaningful risk to their own children if allowed to reside with them.   Henry argues that these shared characteristics are relevant because promoting child safety is the interest the statute is intended to serve.

The Defendants argue Henry's factual allegations regarding the relative risks these classifications of sex offenders pose to their children does not make them similarly situated.   They cite *McGuire*, 512 F. Supp. 3d at 1243, where the court rejected Alabama sex offenders' equal protection challenge to ASORCNA's registration requirements.   However, *McGuire* did not hold that allegations regarding relative risks of sex offenders were insufficient to render them similarly situated. And in any event, the Court finds *McGuire* inapposite because there, the plaintiff sex offenders alleged and argued that they were similarly situated to "non-registrant Alabama citizens," *i.e.*, persons who are not required to register under ASORCNA. *Id.*   Here, by contrast, Henry compares himself and other sex offenders convicted of a child pornography offense to other sex offenders required to register under ASORCNA—*not* non-sex offenders who are not required to register under ASORCNA.   Thus, the Court does not find *McGuire* instructive on the issue of whether Henry has plausibly alleged that child pornography offenders are similarly situated to other sex offenders.

28

In further support of their argument, the Defendants cite Ninth and Tenth Circuit cases in which the courts rejected sex offenders' equal protection claims on the grounds that different classes of sex offenders are not similarly situated. *See Carney v. Okla. Dep't of Pub. Safety*, 875 F.3d 1347, 1353 (10th Cir. 2017) (concluding that an "aggravated sex offender" is not similarly situated to "ordinary sex offenders"); *Litmon v. Harris*, 768 F.3d 1237, 1244 (9th Cir. 2014) (concluding that "sexually violent predators" are not similarly situated to "mentally disordered sex offenders"). In *Carney*, the plaintiff, an aggravated sex offender under Oklahoma law, brought an equal protection challenge to Oklahoma's requirement that he acquire a driver's license indicating that he is a sex offender. 875 F.3d at 1350, 1352. The court concluded without analysis that the plaintiff could not state an equal protection claim because he was not similarly situated to ordinary sex offenders, who are not required to obtain the license. *Id.* at 1353. *Carney* did not explain why the plaintiff was not similarly situated in all relevant respects to his proffered comparators. Thus, the Court does not find *Carney* persuasive on this point.

In *Litmon*, the plaintiff, a sexually violent predator under California law, brought an equal protection challenge to California's requirement that he appear in person at the local police station to update his address and employment information more frequently than mentally disordered sex offenders. 768 F.3d at 1243. The

court concluded that the two groups were not similarly situated because "sexually violent predators must have been *convicted* of a sexually violent offense and have been found likely to 'engage in sexually violent criminal behavior'" upon release from prison, whereas "mentally disordered sex offenders need only have been found to be '*predisposed* to the commission of sexual offenses,' and not sexually violent offenses." *Id.* at 1244 (citation omitted).   Assuming this Court found *Litmon*'s analysis persuasive, the Defendants here do not bother to set forth any specific differences between the two groups of offenders Henry identifies, unlike the court in *Litmon*.   Nor do the Defendants explain how those differences render the groups not similarly situated in all relevant respects.   Instead, the Defendants merely point out that the members of the two groups have been convicted of different crimes. Thus, the Court does not find the Defendants' reliance on *Litmon* helpful.

*Carney* also concluded, however, that Oklahoma had a rational basis to treat aggravated sex offenders differently from ordinary sex offenders because, among other reasons, the state had concluded that aggravated sex offenders pose a high risk of reoffending, thereby warranting different requirements such as the at-issue driver's license.   875 F.3d at 1353.   And *Litmon* similarly concluded that California had "a rational basis for imposing more frequent reporting requirements on sexually violent predators given their criminal history of sexual violence and their higher risk of recidivism."   768 F.3d at 1244.   The Eleventh Circuit has also concluded that the

difference in offenders' crimes provided a rational basis for the state's differential treatment of different groups of offenders with respect to registration requirements. *See Moore*, 410 F.3d 1337, 1346–48 (rejecting sex offenders' equal protection challenge to the Florida analogue of ASORCNA in which they argued that the law impermissibly imposed upon them different registration requirements than were imposed upon other groups of offenders; concluding that the state had a rational basis for its "various classifications and sub-classifications for sex offender registration").   But here, the Defendants do not argue that the difference in sex offenders' crimes provides a constitutionally sufficient reason for treating the two groups of offenders differently.   Instead, they argue only that the two groups are not similarly situated.

The Court finds Henry's arguments more persuasive and concludes that at this stage, Henry has sufficiently shown that he and other sex offenders convicted of child pornography offenses who are not allowed to live with their children are similarly situated to other sex offenders who are allowed to live with their children. He has alleged that sex offenders within both groups are required to register under ASORCNA and that they do not pose a risk to their own children—factual allegations the Court must accept as true—and the Court agrees at this stage that those shared characteristics make the groups similarly situated in all relevant respects.   Further factual development may undermine or negate the factual

allegations upon which Henry's argument relies.  Or further factual development may reveal other distinctions between the groups that undermine or negate the similarly situated element.  But accepting his allegations as true, which the Court must at this stage, Henry has sufficiently alleged the similarly situated element of his equal protection claim.

The Defendants do not respond to Henry's arguments that the equal protection claim must be analyzed under strict scrutiny because the provision burdens fundamental First and Fourteenth Amendment rights, and that the provision cannot withstand strict scrutiny review because it is not narrowly drawn.  In light of the Court's conclusion that Henry has satisfied the similarly situated element at this stage, as well as its conclusion in Part V.A that Henry's other facial challenges survive dismissal, the Court concludes that the Defendants' motions to dismiss Henry's facial and as-applied equal protection claim (Count 3) are due to be denied.

## VI.   CONCLUSION

The Court's conclusion here is not a "pronouncement on the ultimately legality or merit" of § 15-20A-11(d)(4).  *See City of Albuquerque*, 667 F.3d at 1135–36.  It is instead a reflection of the early stage of these proceedings, where Henry's factual allegations are accepted as true, as well as a reflection of the arguments made—and not made—by the Defendants.

Accordingly, the Defendants' motions (Docs. 20, 25) are DENIED.

**DONE** on this the 19th day of December, 2022.

_____/s/ R. Austin Huffaker, Jr._____
R. AUSTIN HUFFAKER, JR.
UNITED STATES DISTRICT JUDGE