IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| BRUCE HENRY, | ) | |
| | ) | |
|    Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:21-cv-797-RAH |
| | ) | [WO] |
| RON ABERNATHY, *et al.*, | ) | |
| | ) | |
|    Defendants. | ) | |

# **MEMORANDUM OPINION AND ORDER**

## **I. INTRODUCTION**

Alabama's sex-offender scheme restricts any person convicted of a sex offense involving a child from sharing a residence or spending a night in the same location with a minor, including his or her own children. *See* ALA. CODE § 15-20A-11(d)(4). In 2013, Bruce Henry was convicted of possessing child pornography and thereafter completed his term of imprisonment. He has since married and fathered a son. Today, that conviction alone, nothing else, prohibits Henry from spending even a single night in the same location with his son—until his son reaches the age of 18—or with any other minor child for the rest of his life. Henry has no mechanism to petition for relief or contest the restriction, no matter the underlying facts of his conviction, no matter his risk of recidivism, no matter his age or position in life. The same prohibition applies to every parent in Alabama with a qualifying conviction, regardless of their individual circumstances or risk of recidivism. Henry challenges the constitutionality of Alabama Code § 15-20A-11(d)(4), both facially and as-applied, pursuant to the First Amendment right of intimate association and the Due Process and Equal Protection Clauses of the Fourteenth Amendment.

1

The parties have each moved for summary judgment. The Court is tasked in part with weighing fundamental rights accompanying parenthood against the State's interest in protecting the health and safety of minors. For the reasons that follow, the Court concludes that Henry's motion for summary judgment is due to be granted in part and denied in part, the State's[1] motions for summary judgment denied, and Alabama Code § 15-20A-11(d)(4) stricken as unconstitutional and severed from the Alabama Sex Offender Registration and Community Notification Act (ASORCNA), Alabama Code § 15-20A-1 *et seq.*

## II. JURISDICTION AND VENUE

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331. Personal jurisdiction and venue are uncontested, and the Court concludes that venue properly lies in the Middle District of Alabama. *See* 28 U.S.C. § 1391.

## III. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56, a district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To demonstrate that a genuine dispute as to a material fact precludes summary judgment, a party opposing a motion for summary judgment must cite "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). When considering a summary judgment motion, a district court must view the evidence in the record in the light most favorable to the non-moving party and

---

[1] The Court will refer to the Defendants collectively as the State.

draw reasonable inferences from that evidence in favor of the non-moving party. *Sconiers v. Lockhart*, 946 F.3d 1256, 1262 (11th Cir. 2020).

## IV. BACKGROUND

The pertinent underlying facts are simple and undisputed. Henry currently resides in Tuscaloosa County, Alabama. In 2013, he pled guilty to one count of possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B), in the United States District Court for the Northern District of Alabama. The district court sentenced him to 70 months of imprisonment followed by 60 months of supervised release. He was released from prison in June 2018 and registered as a sex offender. Henry later married and, on August 4, 2021, welcomed a son. His conviction alone prohibits him from "residing" or "conducting an overnight visit" with his son until his son reaches age 18. *See* ALA. CODE § 15-20A-11(d)(4).

## V. DISCUSSION

Henry's facial challenge to § 15-20A-11(d)(4) under the Due Process Clause of the Fourteenth Amendment is dispositive.[2] The Court concludes § 15-20A-11(d)(4) directly and unduly burdens the fundamental right to the "care, custody, and control" of a parent's own children and is not narrowly tailored to achieve the State's compelling interest in protecting the health and safety of minors, so the Court will enter a permanent injunction enjoining the State from enforcing § 15-20A-11(d)(4) in its current form to redress the unconstitutional statutory harm.

---

[2] "[T]he distinction between facial and as-applied challenges is not so well defined that it has some automatic effect or that it must always control the pleadings and disposition in every case involving a constitutional challenge. The distinction is both instructive and necessary, for it goes to the breadth of the remedy employed by the Court, not what must be pleaded in a complaint." *Citizens United v. Fed. Election Com'n*, 558 U.S. 310, 331 (2010). Whether a statute is unconstitutional on its face turns on "whether the statute fails the relevant constitutional test[.]" *Club Madonna Inc. v. City of Miami Beach*, 42 F.4th 1231, 1256 (11th Cir. 2022).

**A. The Statute**

ASORCNA is "the most comprehensive and debilitating sex-offender scheme in the nation[.]" *McGuire v. Marshall*, 512 F. Supp. 3d 1189, 1198 (M.D. Ala. 2021). As applicable here, § 15-20A-11(d)(4) prohibits adult sex offenders convicted of a "sex offense involving a child" from conducting overnight visits or residing with any minor, including their own children. But it permits qualifying adult sex offenders four hours per day of unfettered, unsupervised access to a minor between the hours of 6:00 a.m. and 10:30 p.m. on two but not three consecutive days at a time, and not more than nine days total per month. *See* ALA. CODE § 15-20A-11(d)(4); *id.* § 15-20A-4(14); *id.* § 15-20A-4(20).

Two layers of exceptions to the statute's general rule generated this prohibition. First, "[n]o adult sex offender shall reside or conduct an overnight visit with a minor." ALA. CODE § 15-20A-11(d). A minor is "[a] person who has not attained the age of 18." *Id.* § 15-20A-4(13). But "if the adult sex offender is the parent . . . of the minor," he may reside or conduct an "overnight visit" with the minor, *id.* § 15-20A-11(d), *unless* the adult sex offender has been convicted of "any sex offense involving a child," *id.* § 15-20A-11(d)(4).[3] A "sex offense involving a child" is "[a] conviction for any sex offense in which the victim was a child or any

---

[3] The statute includes four more exceptions to § 15-20A-11(d). An adult sex offender cannot reside or conduct overnight visits with their minor child, grandchild, stepchild, sibling, or stepsibling when (1) the adult sex offender's parental rights "have been or are in the process of being terminated as provided by law," ALA. CODE § 15-20A-11(d)(1); (2) the adult sex offender has been convicted of any sex offense in which the victim was "any of the minor children, grandchildren, stepchildren, siblings, or stepsiblings of the adult sex offender," *id.* § 15-20A-11(d)(2); (3) "[t]he adult sex offender has been convicted of any sex offense in which a minor was the victim and the minor resided or lived with the adult sex offender at the time of the offense," *id.* § 15-20A-11(d)(3); and (4) "[t]he adult sex offender has been convicted of any sex offense involving forcible compulsion in which the victim was a minor," *id.* § 15-20A-11(d)(5).

4

offense involving child pornography."[4] *Id.* § 15-20A-4(27). A child is "[a] person who has not attained the age of 12." *Id.* § 15-20A-4(2). An "offense involving child pornography" means possessing or disseminating obscene matter containing a visual depiction of persons under the age of 17 and any other such violation as defined in the Alabama Child Pornography Act. *Id.* § 15-20A-5(14); ALA. CODE § 13A-12-190 *et seq.*

Read together then, when an adult sex offender is convicted of any sex offense against a victim who was under 12 years old, or of a child pornography offense depicting a victim under age 17, the offender is *forever* prohibited from residing with or conducting an overnight visit with any minor until the minor reaches age 18.

ASORCNA defines "overnight visit" as "[a]ny presence between the hours of 10:30 p.m. and 6:00 a.m." ALA. CODE § 15-20A-4(14). "Reside" means being "habitually or systematically present at a place," which "shall be determined by the totality of the circumstances, including the amount of time the person spends at the place and the nature of the person's conduct at the place." *Id.* § 15-20A-4(20). "Reside" is further defined:

> The term reside includes, but is not limited to, spending more than four hours a day at the place on three or more consecutive days; spending more than four hours a day at the place on 10 or more aggregate days during a calendar month; or spending any amount of time at the place coupled with statements or actions that indicate an intent to live at the place or to remain at the place for the periods specified in this sentence.

*Id.*

Section 15-20A-11(d)(4) therefore prohibits a qualifying parent from being present in the family home where his minor child resides in the following circumstances: (1) at any time between the hours of 10:30 p.m. and 6:00 a.m.; (2)

---

[4] No one disputes that Henry's child pornography conviction qualifies as an "offense involving child pornography" within the meaning of § 15-20A-4(27).

5

for more than four hours a day on three consecutive days; (3) for more than four hours a day on ten or more days during a calendar month; and (4) in any other circumstance in which the parent is "habitually or systemically present" at the minor's home. *Id.*; ALA. CODE § 15-20A-4(14).

The residency restrictions apply for life. The statute offers no mechanism by which a parent can challenge or petition for relief from the residency restriction, although it does allow a parent to petition for relief from ASORCNA's 2,000-foot residency restriction under certain circumstances.[5] ALA. CODE § 15-20A-11(a); *id.* § 15-20A-23(a).

Although, according to the Alabama Legislature, the residency restrictions further "the primary governmental interest of protecting vulnerable populations, particularly children," *id.* § 15-20A-2(5), the statute allows every qualifying adult sex offender daily unsupervised access to minors for four hours at a time in any one place on two consecutive days and nine aggregate days per month, as long as such access occurs between the hours of 6:00 a.m. and 10:30 p.m. *See* ALA. CODE § 15-20A-11(d)(4); *id.* § 15-20A-4(14); *id.* § 15-20A-4(20).

The parties and the Court are unaware of any statute enacted by another state substantially similar to § 15-20A-11(d)(4). And the State concedes that "[a]side from ASORCNA, it does not appear that Alabama has ever statutorily limited parents' contact or ability to live with their own children based on the fact of a conviction or another single fact." (Doc. 131 at 1.)

---

[5] ASORCNA allows a sex offender to petition for relief from the residency restriction in § 15-20A-11(a) "during the time a sex offender is terminally ill or permanently immobile, or the sex offender has a debilitating medical condition requiring substantial care or supervision or requires placement in a residential health care facility." ALA. CODE § 15-20A-23(a). Section 15-20A-11(a) prohibits adult sex offenders from establishing or maintaining a residence "within 2,000 feet of the property on which any school, childcare facility, or resident camp facility is located." However, neither § 15-20A-23 nor any other ASORCNA provision allows a sex offender to petition for relief from the residency restriction in § 15-20A-11(d), which prohibits adult sex offenders from residing or conducting overnight visits with a minor.

### B. Henry's Due Process Challenge

Henry raises a facial substantive due process challenge to § 15-20A-11(d)(4), arguing the restriction is not narrowly tailored to serve a compelling state interest and therefore unconstitutionally burdens his fundamental right to the "care, custody, and control" of his son.

The Fourteenth Amendment to the United States Constitution guarantees that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. The Supreme Court has recognized a procedural and substantive component to the Due Process Clause. *See Reno v. Flores*, 507 U.S. 292 (1993). The substantive due process component "forbids the government [from infringing] certain 'fundamental' liberty interests *at all*, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." *Id.* at 302 (emphasis in original).

So, where a plaintiff invokes a right not enumerated in the Constitution, the analysis of a substantive due process claim begins with a "careful description of the asserted right." *Id.*; *accord Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997). Then, to decide whether that right is protected by the Due Process Clause, "the [Supreme] Court has long asked whether the right is 'deeply rooted in [our] history and tradition' and whether it is essential to our Nation's 'scheme of ordered liberty.'" *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2246 (2022) (citing *Timbs v. Indiana*, 139 S. Ct. 682, 686 (2019); *Glucksberg*, 521 U.S. at 721).

#### i. The fundamental right at issue

The State argues that Henry cannot show he possesses, nor that the statute burdens, a fundamental "right of a person convicted of a sex offense involving a child to reside with a minor child." (Doc. 97 at 18, 24.) But the State misreads Eleventh Circuit precedent and conflates the identification of the right at issue with the tailoring analysis. Henry is correct that the fundamental right at issue here is the

7

"care, custody, and control" of his son. More specifically, that fundamental right's guarantee that a parent may reside with his child. And that right is undoubtedly "deeply rooted in this Nation's history and tradition." *Glucksberg*, 521 U.S. at 720–21 (citation omitted).

The "fundamental right" "of parents in the care, custody, and control of their children is perhaps the oldest of the fundamental liberty interests recognized by [the Supreme] Court." *Troxel v. Granville*, 530 U.S. 57, 65 (2000) (stating that the right is protected under the Due Process Clause of the Fourteenth Amendment); *Glucksberg*, 521 U.S. at 720 ("In a long line of cases, we have held that, in addition to the specific freedoms protected by the Bill of Rights, the 'liberty' specially protected by the Due Process Clause includes the right to . . . direct the education and upbringing of one's children." (cleaned up) (citations omitted)); *Santosky v. Kramer*, 455 U.S. 745, 753 (1982) (explaining that natural parents have a "fundamental liberty interest . . . in the care, custody, and management of their child"); *Wisconsin v. Yoder*, 406 U.S. 205, 232 (1972) ("The history and culture of Western civilization reflect a strong tradition of parental concern for the nurture and upbringing of their children. This primary role of the parents in the upbringing of their children is now established beyond debate as an enduring American tradition."); *Stanley v. Illinois*, 405 U.S. 645, 651 (1972) (explaining that the right to raise one's children "ha[s] been deemed 'essential,'" and that "the custody, care and nurture of the child reside first in the parents" (citations omitted)); *Prince v. Massachusetts*, 321 U.S. 158, 166 (1944) ("It is cardinal with us that the custody, care, and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder."); *Pierce v. Society of Sisters*, 268 U.S. 510, 534–35 (1925) (holding the "liberty of parents and guardians" includes the right "to direct the upbringing and education of children under their control") ("The child is not the mere creature of

the State; those who nurture him and direct his destiny have the right, coupled with the high duty, to recognize and prepare him for additional obligations."); *Meyer v. Nebraska*, 262 U.S. 390, 399, 401 (1923) (holding that the "liberty" protected by the Due Process Clause includes the right of parents to "establish a home and bring up children" and "to control the education of their own").[6]

The fundamental right to the "care, custody, and control" of one's child necessarily implicates the ability to reside or stay overnight with the child. *See Meyer*, 262 U.S. at 399. In another substantive due process context, the Supreme Court has also long recognized the right to "cohabitat[e] with one's relatives." *See Roberts v. United States Jaycees*, 468 U.S. 609, 619 (1984). Residence and overnight visitation assuredly accompany and lie at the heart of the fundamental right of a parent to the "care, custody, and control" of his child. From the founding, it has been the right and prerogative of parents in this country to live with their children. *See Moore v. City of E. Cleveland*, 431 U.S. 494, 499, 504–06 (1977) (plurality opinion).

The Eleventh Circuit said, "in order to trigger substantive due process protection [the statute] must either directly or unduly burden the fundamental rights claimed by" the plaintiff. *Doe v. Moore*, 410 F.3d 1337, 1344 (11th Cir. 2005).

---

[6] On June 1, 2023, during the pendency of this case, Alabama enacted House Bill 6 which codified the Supreme Court's recognition of fundamental rights in parenthood, stating, "The Alabama Supreme Court and United States Supreme Court have recognized that parents have a fundamental right to direct the upbringing of their children [and] [t]he liberty protected by the due process clause includes the fundamental right of parents to direct the education, upbringing, care, and control of their children." H.B. 6, 2023 Leg., Reg. Sess. (Ala. 2023) (enacted as Act #2023-555). The new statute further provides, "[t]he government may not burden the fundamental right of parents to direct the education, upbringing, care, and control of their child unless the government demonstrates that the application of the burden is narrowly tailored to a compelling state interest and the government uses the least restrictive means possible to further that interest." *Id.* And the statute "shall only be construed as applying to disputes between parents and the government or third parties[.]" *Id.*

Relying on *Moore*, the State claims the right at issue is "the purported right of a person convicted of a sex offense involving a child to reside with a minor child." (Doc. 97 at 24 (citation and quotation omitted).) It points to the Eleventh Circuit's use of the text of Florida's Sex Offender Act to narrowly frame the right. 410 F.3d at 1344. But *Moore* is inapposite to and distinguishable from this case. *Moore* turned on a challenge to a state sex offender registry statute, not residency or visitation restrictions, and the plaintiff in *Moore* made "broad claims" that the statute infringed "their liberty and privacy interests." *Id.* at 1343. Faced with such broad pronouncements, and cognizant of the Supreme Court's reluctance in the substantive due process arena, the Eleventh Circuit "endeavor[ed] to create a more careful description of the asserted right in order to analyze its importance." *Id.*

Henry's Complaint does not suffer the same infirmity as in *Moore*. He specifically invokes his Fourteenth Amendment right as a parent to the "care, custody, and control" of his son and seeks to vindicate that right's guarantee of a parent's ability to reside and stay overnight in the same location with his child. (Doc. 1 at 15.)

But even if the right is described more narrowly, the State's description falls short because the State's proffered version fails to recognize Henry's asserted rights as a *parent*. (*See* Doc. 97 at 23 (describing the "right of a person convicted of a sex offense involving a child to reside with a minor child," without reference to the parent-child relationship.) And any description of the right asserted here, no matter how narrowly described, will implicate the Supreme Court's recognition of fundamental rights attendant to parenthood and Henry's invocation of them as a parent.

The State is correct that "[i]t is self evident" the parent-child relationship is "sufficiently vital to merit constitutional protection in appropriate cases." (Doc. 97 at 20 (citing *Lehr v. Robertson*, 463 U.S. 248, 256 (1983)). The State is also correct

10

that not every parent who invokes that protection necessarily has an "appropriate case" because it "must consider the broad framework that has traditionally been used to resolve legal problems arising from the parent-child relationship." (*Id.*) "But when the government intrudes on choices concerning family living arrangements, this Court must examine carefully the importance of the governmental interests advanced and the extent to which they are served by the challenged regulation." *City of E. Cleveland*, 431 U.S. at 499.

Section 15-20A-11(d)(4) directly burdens Henry's fundamental right, as a parent, to the "care, custody, and control" of his minor child by restricting him from residing or staying overnight with his son before he reaches age 18. The same is true for any other parent with a qualifying conviction. That does not mean the burden is improper or that the statute is necessarily unconstitutional at this stage of the analysis, but it does confirm that Henry has articulated an appropriate substantive due process claim. The State would have the tail wag the dog. Its description of the right places the relationship between Henry's asserted fundamental right as a parent and the State's interest in regulating the actions of convicted sex offenders for the purpose of protecting minors at the wrong stage of the analysis. The State's justification for burdening the right must not find its way into the description of the right itself. The State's arguments justifying the restriction apply to tailoring, after the Court concludes which level of scrutiny applies to Henry's claim.

### ii. The level of scrutiny

Because § 15-20A-11(d)(4) burdens Henry's fundamental right to the "care, custody, and control" of his son, then the statute must withstand strict scrutiny. *Reno*, 507 U.S. at 302. To survive strict scrutiny review, the provision must be "narrowly tailored to serve a compelling state interest." *Id*.

### iii. The compelling interest

The parties do not dispute that the State's interest in protecting the health and safety of minors from convicted adult sex offenders is compelling. And they should not. It is. *New York v. Ferber*, 458 U.S. 747, 756–57 (1982).

### iv. Narrow tailoring

Henry contends that although the State's interest in protecting minors is compelling, § 15-20A-11(d)(4) is not narrowly tailored to serve that interest. He is right.

The State bears the burden "to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest[.]" *Reed v. Town of Gilbert*, 576 U.S. 155, 171 (2015) (quoting *Ariz. Free Enterprise Club's Freedom Club PAC v. Bennett*, 564 U.S. 721, 734 (2011)). "Under strict scrutiny, the government must adopt 'the least restrictive means of achieving a compelling state interest[.]'" *Ams. for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2383 (2021) (quoting *McCullen v. Coakley*, 573 U.S. 464, 478 (2014) (internal citation omitted)).

The State claims § 15-20A-11(d)(4) "is constitutional by any measure" and is narrowly tailored because (1) it "does not involve the termination of parental rights," (2) it "specifically targets child pornography offenders," and (3) "[g]iven the high rates of recidivism and the difficulty of detecting offenses, the provision could not be tailored more narrowly while achieving the State's interest in protecting children." (Doc. 97 at 29, 31–34.) Henry responds by arguing "a complete, lifetime, non-appealable abrogation of the right to live with one's own children" is not narrowly tailored nor the least restrictive means to further the State's interest. (Doc. 117 at 26.) He also takes issue with the State's framing of the recidivism of sex offenders. (*Id.*) And he further suggests that, at a minimum, if § 15-20A-11(d)(4) were narrowly tailored, it would afford him, as a parent, the ability to petition for relief from the residency prohibition at an individualized hearing.

12

The overbreadth of § 15-20A-11(d)(4) is breathtaking. It commands that no "adult sex offender [who] has been convicted of any sex offense involving a child" may "reside or conduct an overnight with a minor." ALA. CODE § 15-20A-11(d)(4). It applies to *any* sex offense involving a child, including a child pornography conviction. It applies for life. No exceptions. No ability to petition or appeal. No relief. No ability for a parent to ask for relief by showing that he bears no risk of harm to his or her child. No other state has crafted or enacted such a broad, unyielding rule in this context.

The statute treats all sex offenses involving a child the same, including child pornography offenses. It applies equally to, for example, a 19-year-old male college freshman convicted for downloading sexually explicit content of his 16-year-old high school girlfriend, to the worst of the worst offenders—like one who trafficked and raped children.

If convicted, and based on that conviction alone, both of those individuals would be subject to § 15-20A-11(d)(4) for life, without relief, no matter the circumstances that led to the conviction, regardless of how the circumstances may have changed in the months, years, or decades following the conviction. These extremes reveal the statute's core infirmity: it relies on the mere fact of conviction in perpetuity, despite the varying elements attendant to the several independent crimes considered sexual offenses involving a minor. The State argues that the facts resulting in a conviction for some sex offenses involving a minor, such as the child sex trafficker or serial offender, merit the statute's lifetime restriction. And that is justified. But the State's argument looks beyond the mere fact of conviction to justify the lifetime restriction and therefore engages in the sort of tailoring the statute lacks.

The spectrum of circumstances the statute encompasses stands in contradiction to the State's assertion that the statute is targeted to capture deviant

child pornography offenders. Although the provisions surrounding § 15-20A-11(d)(4) restrict residency and visitation based upon specific, targeted offenses, any person who qualifies under §§ 15-20A-11(d)(1), (2), (3), and (5) is also captured by § 15-20A-11(d)(4) if a child was involved in the offense. Section 15-20A-11(d)(4) does not explicitly mention child pornography, and it captures a much wider group of offenders than solely child pornography offenders.

In defense of the non-challengeable and lifetime nature of the restriction, the State argues the statute is narrowly tailored because the individualized "risk assessment tools Henry has identified are not valid and reliable as applied to child pornography-only offenders" and any mechanism to petition for relief from other of ASORCNA's restrictions is inapplicable to relief from § 15-20A-11(d)(4) because those mechanisms are "hardly a blueprint for assessing the risk of healthy, mobile sex offenders[.]" (Doc. 115 at 17–19.)[7]

It is not within the Court's purview in this case to conclude which mechanism for exception or relief from the restriction is appropriate or under what circumstances exceptions or individualized relief from § 15-20A-11(d)(4) would be acceptable. That is for the elected representatives of Alabama to decide. But § 15-20A-11(d)(4)

---

[7] The State suggests "[a]n individual's documented criminal actions that demonstrate a 'substantial risk' of harm to children [] justify State intervention into that individual's family arrangements." (Doc. 131 at 11). And, in its view, "[b]ecause child pornography offenders as a class pose a substantial risk of harm to children, the State may categorically prevent them from living with minors." (*Id.*) The State would find itself on much stronger constitutional footing, and § 15-20A-11(d)(4) may well pass constitutional muster even under strict scrutiny, had ASORCNA provided some mechanism for a qualifying offender to petition for relief from the restriction, as ASORCNA does for certain other restrictions. *E.g., Schultz v. Alabama*, 42 F.4th 1298, 1331 (11th Cir. 2022) (concluding a bail statute that treats arrestees differently based solely upon wealth was constitutional under the Fourteenth Amendment because indigent arrestees, although jailed for a period of time while their wealthy counterparts were not, were provided an individualized hearing at which "the judge will consider all relevant factors"). But the Court need not draw conclusions beyond deciding that the mere fact of conviction without any mechanism or procedure for appeal, exception, petition, or some individualized relief, however slight, from a lifetime restriction fails the relevant constitutional test in this case.

is simply not narrowly tailored: (1) the statute allows all qualifying adult sex-offenders hours-long unsupervised access to minor children, inconsistent with the statute's claimed compelling interest; (2) the mere fact of a qualifying conviction triggers the lifetime restriction; (3) except for ASORCNA, Alabama has never statutorily limited parents' contact or ability to live with their children based upon the single fact of conviction; (4) there is no mechanism for individualized relief from Section 15-20A-11(d)(4) even though the Alabama Legislature contemplated and approved of individualized relief from at least one other ASORCNA restriction; and (5) the State did not provide persuasive evidence to carry its burden to show the non-appealable lifetime restriction is the least restrictive means by which to advance the State's compelling interest.

The State is correct that the statute does not formally terminate parental rights, but it does directly and unduly burden parents' fundamental right to the "care, custody, and control" of their children, which guarantees their ability to "establish a home and bring up children," *Meyer*, 262 U.S. at 399, on its face, and it cannot withstand strict scrutiny absent some mechanism for appeal, challenge, exception, or individualized relief. *Cf. Orr v. Orr*, 440 U.S. 268, 281 n.12 (1979) (citing *Reed v. Reed*, 404 U.S. 71, 76 (1971)).

Section 15-20A-11(d)(4) is, therefore, facially unconstitutional under the Due Process Clause of the Fourteenth Amendment.

### C. Severability

In circumstances such as this, where a single provision of a statute fails as unconstitutional, the Court is bound to "refrain from invalidating more of the statute than is necessary . . . and to maintain the act in so far as it is valid." *Alaska Airlines, Inc., v. Brock*, 480 U.S. 678, 684 (1987). Anticipating that constitutional infirmities may exist in certain statutory provisions codified as part of the 1975 Code of Alabama, the Alabama Legislature decided that individual provisions of ASCORNA

15

declared invalid or unconstitutional are severable from the remainder of the statute. *See* ALA. CODE § 1-1-16.[8] ASORCNA can be given effect absent § 15-20A-11(d)(4), so the remainder of ASORCNA remains "intact and in force." *See Jefferson Cnty. Comm'n v. Edwards*, 49 So. 3d 685, 693 (Ala. 2010) (citing *City of Birmingham v. Smith*, 507 So. 2d 1312, 1315 (Ala. 1987)).

### D. Remedies

Henry requests declaratory and injunctive relief. Having concluded § 15-20A-11(d)(4) is facially unconstitutional, the Court will grant both declaratory but injunctive relief.

"Ordinarily, the practical effect of injunctive and declaratory relief will be virtually identical." *Wooley v. Maynard*, 430 U.S. 705, 711 (1977) (cleaned up). The Declaratory Judgment Act allows a court exercising proper jurisdiction to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." 28 U.S.C. § 2201(a). It is "an enabling Act, which confers a discretion on courts rather than an absolute right upon the litigant." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995). "It only gives the federal courts competence to make a declaration of rights; it does not impose a duty to do so." *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1330 (11th Cir. 2005) (citing *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 494 (1942)). A declaration that § 15-20A-11(d)(4) is unconstitutional and a permanent injunction enjoining the State from

---

[8] "If any provision of this Code or any amendment hereto, or any other statute, or the application thereof to any person, thing or circumstances, is held invalid by a court of competent jurisdiction, such invalidity shall not affect the provisions or application of this Code or such amendment or statute that can be given effect without the invalid provisions or application, and to this end, the provisions of this Code and such amendments and statutes are declared to be severable." ALA. CODE § 1-1-16.

enforcing the statute fully rectifies Henry's harm, and it is necessary and justified in this case "to afford adequate protection of constitutional rights." *Wooley*, 430 U.S. at 711–12.

### E. Henry's First Amendment and Equal Protection Claims

Having concluded § 15-20A-11(d)(4) is facially unconstitutional under the Due Process Clause, the statutory harm of which Henry complains will be fully redressed by the Court's declaratory judgment and permanent injunction. The Court will therefore pretermit discussion of Henry's two alternative First Amendment intimate association and Fourteenth Amendment Equal Protection causes of action challenging the constitutionality of § 15-20A-11(d)(4) and dismiss them as moot. *See Cnty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979); *Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985) ("Past exposure to illegal conduct does not in itself show a pending case or controversy regarding injunctive relief if unaccompanied by any continuing, present injury or real and immediate threat of repeated injury.").

## VI. CONCLUSION

The Court is mindful of its conclusion in another ASORCNA constitutional challenge: the State "can prosecute sex offenses to the full extent of the law. It can also act to protect its citizens from recidivist sex offenders. . . . [But] once a person serves his full sentence, he enjoys the full protection of the Constitution. Sex offenders are not second-class citizens, and anyone who thinks otherwise would do well to remember Thomas Paine's wisdom: 'He that would make his own liberty secure, must guard even his enemy from oppression; for if he violates this duty, he establishes a precedent that will reach to himself.'" *Doe 1 v. Marshall*, 367 F. Supp. 3d 1310, 1339 (M.D. Ala. 2019) (citations omitted).

There being no genuine dispute of material fact, it is therefore **ORDERED** as follows:

17

1.      Plaintiff's Motion for Summary Judgment (Doc. 99) is **GRANTED in part** on the merits with respect to Plaintiff's facial challenge to Alabama Code § 15-20A-11(d)(4) under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, and **DENIED as moot** in all other respects as set forth above;

2.      Alabama Code § 15-20A-11(d)(4) is **DECLARED** facially unconstitutional in its current form;

3.      The State is permanently **ENJOINED** from enforcing Alabama Code § 15-20A-11(d)(4) in its current form;

4.      Plaintiff's First Amendment intimate association and Fourteenth Amendment equal protection causes of action (Doc. 1) are **DISMISSED without prejudice as moot**;

5.      All other motions currently pending before the Court in this case (Docs. 90, 91, 92, 93, 94, 97, 98, 102, 103) are **DENIED as moot**;

6.      A separate judgment will issue.

**DONE** on this the 10th day of January 2024.

_____
R. AUSTIN HUFFAKER, JR.
UNITED STATES DISTRICT JUDGE